Entered: February 19th, 2020
Signed: February 19th, 2020



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | |
|---|---|
| In re: | |
| LISA YVETTE MORRIS, | CASE NO. 16-23156-NVA |
| Debtor. | CHAPTER 7 |
| LISA YVETTE MORRIS, | |
| Plaintiff, | |
| v. | ADVERSARY NO. 18-404 |
| STATE EMPLOYEES CREDIT UNION, | |
| Defendant. | |

### MEMORANDUM OPINION GRANTING
### JUDGMENT IN FAVOR OF DEFENDANT

In this adversary proceeding, Plaintiff / Debtor Lisa Yvette Morris alleges that Defendant State Employees Credit Union ("SECU") violated the discharge injunction codified in 11 U.S.C. § 524 by initiating a state court collections action against the Plaintiff and by sending the Plaintiff three letters after the Plaintiff had received a discharge in her bankruptcy case. The Court held a trial on June 19, 2019. For the reasons that follow, the Court finds that SECU did not violate the discharge injunction.

## Procedural History and Undisputed Facts

In May 2008, the Plaintiff applied, and was approved, for a VISA credit card through SECU (the "SECU Credit Card") with a $15,000 unsecured line of credit. Joint Stipulation of Undisputed Facts ("JS") [AP ECF No. 21] ¶ 1.[1] The Plaintiff filed a chapter 7 petition in the United States Bankruptcy Court for the District Court of Maryland on September 30, 2016. *Id.* ¶ 2. SECU was identified and listed as an unsecured creditor on the creditor mailing matrix with a mailing address of 8503 LaSalle Road, Towson, Maryland 21286 (the "LaSalle Address"), which the Plaintiff obtained from her credit report. *Id.* ¶¶ 4, 5, 8. SECU neither owns the property at the LaSalle Address nor has a branch there. *Id.* ¶¶ 6, 7. In the four months immediately preceding the Plaintiff's bankruptcy filing, SECU sent four credit card statements to the Plaintiff which identified SECU's correspondence address as SECU/Card Services, PO Box 23896, Baltimore, MD 21203 (the "PO Box Address"). Pl's. Ex. 6; Def's. Ex. 3.

On October 22, 2016, the Court issued a notice in the main bankruptcy case stating that the Notice of Meeting of Creditors sent to SECU at the LaSalle Address was returned as undeliverable. JS ¶ 9. Notwithstanding this notice and notwithstanding the Plaintiff's knowledge of SECU's correct address from the credit card statements, the Plaintiff did not correct SECU's mailing address. *Id.* ¶ 10. On January 13, 2017, the Court entered an Order [BK ECF No. 24] discharging the Plaintiff (the "Discharge Order"). The Certificate of Service [BK ECF No. 25] for the Discharge Order indicates "invalid address provided" for SECU and that SECU did not receive electronic notice through the Court's electronic noticing system.

---

[1] References to papers filed in this adversary proceeding bear the prefix "AP," while references to papers filed in the main bankruptcy case bear the prefix "BK."

On February 7, 2017, the Plaintiff's credit card account was charged off by SECU and assigned to its outside collection counsel, Cohn, Goldberg, & Deutsch ("CGD") for collection.  JS ¶ 12.  On November 21, 2017, CGD filed a collection action (the "Collection Suit") on behalf of SECU in the District Court of Maryland for Baltimore County, Case No. 080400358572017, against the Plaintiff and "Nichole Knight" as co-Defendants.[2]  *Id.* ¶¶ 13, 14.  On December 28, 2017, the Plaintiff's bankruptcy counsel sent a letter to CGD advising that the debt at issue in the Collection Suit had been discharged in the Plaintiff's bankruptcy case.  *Id.* ¶ 15.  CGD responded to the letter and dismissed the Collection Suit on January 9, 2018.  *Id.* ¶ 20.[3]

After CGD dismissed the Collection Suit, SECU sent three letters to the Plaintiff titled "Notice of Negative Balance" on January 29, 2018; February 13, 2018; and March 29, 2018 (collectively, the "Negative Balance Notices").  *Id.* ¶ 21.  The Negative Balance Notices identified a negative balance on the Plaintiff's deposit account at SECU and advised that, if the account was not brought positive within a certain number of days, SECU would close the deposit account and the Plaintiff would lose certain SECU privileges.  *Id.* ¶ 22.

## Discussion

The Complaint contains one count and seeks redress against SECU for alleged violations of the discharge injunction.[4]  Section 524(a)(2) of the Bankruptcy Code provides that "[a]

---

[2] There is no evidence that Ms. Knight and the Plaintiff are related, have joint debt, or have even met.  It appears that they became joint defendants to the Collection Suit due to SECU's carelessness in compiling and reviewing the account records it sent to CGD (Hr'g Tr. 22:16–23:12), a mistake that was compounded when CGD failed to discover the error (Hr'g Tr. 57:1–59:9).

[3] During the pendency of the chapter 7 case, an unrelated adversary proceeding (Adversary No. 16-0539) was brought by the Chapter 7 Trustee against Sun West Mortgage Company ("Sun West").  JS ¶ 17.  Sun West retained CGD, which received notices for the adversary proceeding and the bankruptcy case from November 2016 through July 2017, including notice that the Plaintiff had received a discharge on January 13, 2017.  *Id.* ¶ 18.

[4] The Complaint is entitled "Complaint seeking contempt remedies for violation of the automatic stay."  Nevertheless, the facts pled and the relief sought are consistent with a complaint seeking relief for a violation of the discharge injunction.  This is confirmed by the Plaintiff's Pretrial Statement which provides that, "[t]his Adversary is a claim

discharge in a case under this title … operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). The "debt" referred to in subsection (a)(2) is limited to "any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title." *Id.* § 524(a)(1). Relevant to this case, § 727 provides for a discharge of any debt that arose pre-petition, subject to the limitations of § 523 (which are not relevant here). 11 U.S.C. § 727(b).

> While § 524(a) does not expressly provide a remedy for a violation of the statutory injunction, the federal courts have uniformly held that bankruptcy courts have authority under § 105(a) to enforce § 524(a) through contempt proceedings. *In re Paul*, 534 F.3d 1303, 1306–1307 (10th Cir. 2008) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506–07 (9th Cir. 2002), *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001), *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000)); *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997); *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996).

*In re Mejia*, 559 B.R. 431, 442 (Bankr. D. Md. 2016). The burden of proof in a contempt proceeding is clear and convincing evidence. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000). "Most courts to have considered the issue of contempt sanctions in this context have settled on a two-part test, which we adopt: (1) whether the creditor violated the injunction, and (2) whether he or she did so willfully." *In re Fina*, 550 F. App'x 150, 154 (4th Cir. 2014). To determine when a discharge injunction violation is willful, the Court applies the "same … standard used to determine whether a violation of the automatic stay was willful." *In re Alder*, No. 10-28229-JS, 2016 WL 5947220, at *3 (Bankr. D. Md. Oct. 13, 2016). *See also In re Baxter*, No. 13-27709-DER, 2015 WL 6122158, at *7 (Bankr. D. Md. Oct. 15, 2015). That standard requires

---

against the Defendant for attempts to collect a debt which had been discharged in the Plaintiff's Chapter 7 bankruptcy." [AP ECF No. 16 at 1].

finding both an intentional act and knowledge of the automatic stay before a creditor can be found to have violated the automatic stay. *In re Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995).

The Collection Suit

The Collection Suit sought to recover a debt incurred by the Plaintiff through her use of the SECU Credit Card. It is undisputed that the SECU Credit Card debt was listed on the Plaintiff's bankruptcy schedules [BK ECF No. 1 at 28] and that the debt was incurred pre-petition. Under § 727(b), the SECU Credit Card debt was discharged on January 13, 2017 when the Court entered the Discharge Order. Under § 524(a)(2), SECU was enjoined from any collection efforts related to the SECU Credit Card debt. It therefore follows that the Collection Suit was a violation of the discharge injunction because it sought to collect a debt that had already been discharged.[5]

The inquiry does not end there, however. As the case law confirms, a violation of the discharge injunction – alone – is insufficient to support a finding of contempt and an award of damages. Instead, the Plaintiff must also show that the violation was willful – i.e., that SECU had knowledge of the Plaintiff's bankruptcy case and acted intentionally. *See In re Fina*, *supra*. On this part of the test, the Plaintiff fails to carry her burden.

The Plaintiff has offered no evidence to support a finding that SECU had actual notice of the Plaintiff's bankruptcy case. The Plaintiff concedes that the LaSalle Address she listed in her creditor mailing matrix was incorrect. [AP ECF No. 41 ¶ 7]. And the docket entries in the Plaintiff's bankruptcy case confirm that SECU never received notice of the Plaintiff's Meeting of Creditors or service of the Discharge Order. Instead, the Plaintiff argues that it was reasonable for

---

[5] The parties' pre- and post-trial briefing concedes this point, as both parties assume it to be true and neither party specifically addresses it. Instead, the parties spill much ink on whether SECU had actual or imputed notice of the Plaintiff's bankruptcy case. Moreover, the response of CGD to the letter from Plaintiff's counsel – including CGD's dismissal of the Collection Suit – is a tacit admission that the Collection Suit violated the discharge injunction.

her to rely on a third-party credit report to obtain an address for SECU and that SECU should have updated its address with that third party. [AP ECF No. 41 ¶ 7].

The Plaintiff ignores the mandate of § 342 concerning notice where a creditor sends pre-petition communications to the debtor, which provides as follows:

> If, within the 90 days before the commencement of a voluntary case, a creditor supplies the debtor in at least 2 communications sent to the debtor with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.

11 U.S.C. § 342(c)(2)(A). SECU provided uncontroverted evidence at trial that it sent at least two statements to the Plaintiff in the ninety days before the Plaintiff filed her bankruptcy case and that those statements specified mailing and notice addresses for SECU. The Plaintiff therefore had actual notice of SECU's correct address pre-petition from SECU itself and, pursuant to § 342, was required to use the address identified in the statements. The Plaintiff, however, opted to rely on a different address procured from a third party unrelated to SECU. The Plaintiff's error is compounded by the fact that she did not update SECU's address in her creditor mailing matrix [JS ¶ 10], despite knowing that the Notice of Meeting of Creditors sent to SECU at the LaSalle Address was returned as undeliverable [JS ¶ 9] and that the Certificate of Service [BK ECF No. 25] for the Discharge Order indicates "invalid address provided" for SECU and that SECU did not receive electronic notice through the Court's electronic noticing system.[6]

---

[6] The Plaintiff also argues in her post-trial brief that SECU had actual knowledge of her bankruptcy filing because SECU, or its third-party credit card vendor (FIS), reported the Plaintiff's bankruptcy to Equifax. [AP ECF No. 41 ¶¶ 19–24]. The Plaintiff, however, offered no evidence and elicited no testimony at trial to support this argument. The evidence and testimony did not establish how a bankruptcy notation was included in the Equifax credit report or what entity provided that information to Equifax – that is, whether SECU or FIS provided that information to Equifax or whether Equifax obtained that information from another source. The Plaintiff admits that the evidence is "circumstantial" and then attempts to turn the parties' obligations on their heads when she asserts that "SECU has

In the alternative, the Plaintiff argues that CGD had actual knowledge of her bankruptcy (through its representation of Sun West in an unrelated adversary proceeding) and that CGD's knowledge can be imputed to SECU because SECU hired CGD to undertake the Collection Suit.

On November 18, 2016, the Chapter 7 Trustee in the Plaintiff's bankruptcy case initiated an adversary proceeding against Sun West (the "Sun West Adversary Proceeding"). Sun West is an entity unrelated to SECU and the Sun West Adversary Proceeding does not implicate SECU or its rights. On December 9, 2016, CGD filed an answer to the complaint in the Sun West Adversary Proceeding on behalf of Sun West. Thereafter, CGD received notices from the Court's electronic noticing system from the Plaintiff's bankruptcy case and the Sun West Adversary Proceeding. In July of 2017, the Sun West Adversary Proceeding was closed.

The Plaintiff argues that CGD's knowledge of the Plaintiff's bankruptcy through its representation of Sun West can be imputed to SECU, even though SECU did not engage CGD in connection with any aspect of the Debtor's bankruptcy case. The relevant facts are not in dispute and thus the question of imputed knowledge is one of law. The Plaintiff, however, has not identified any legal authority to support her imputation argument.

Many courts have refused to impute an attorney's notice of a bankruptcy case to a client where the notice was provided to the attorney while working on behalf of a different client. For example, in *Maldonado v. Ramirez*, 757 F.2d 48 (3d Cir. 1985), the Third Circuit reversed the district court's holding that a litigant was charged with knowledge of a bankruptcy case because her counsel had actual knowledge of the bankruptcy case on account of his involvement in the bankruptcy case on behalf of another client. *Id*. at 50. The Circuit Court clarified that knowledge can only be imputed from attorney to client where the knowledge was acquired by the attorney

---

largely been unable to show" that it did not inform Equifax of the Plaintiff's bankruptcy. [AP ECF No. 41 ¶ 24]. The burden of proof is the Plaintiff's and she has failed to carry it.

while in the service of that client. "[A]n attorney given notice of [a] bankruptcy on behalf of a particular client is not called upon to review all of his or her files to ascertain whether any other client may also have a claim against the bankrupt." *Id.* at 51.

The Ninth Circuit similarly refused to impute actual knowledge of a bankruptcy obtained by counsel during the representation of one client to a different client. *See In re Perle*, 725 F.3d 1023 (9th Cir. 2013). The *Perle* Court noted that, as here, the plaintiff "has identified no case, nor are we able to find one, that imputes to a client knowledge that his lawyer gained while representing a different client. In fact, the authority is to the contrary." *Id.* at 1028. Agreeing with the reasoning in *Maldonado*, the Ninth Circuit commented that "a contrary rule would impose an undue burden on counsel." *Id. See also Jarreau-Griffin v. City of Vallejo*, 531 B.R. 829, 833 (E.D. Cal. 2015) (relying upon rationale in *Perle* to find no actual or imputed notice of bankruptcy where creditor's former attorney had actual knowledge of bankruptcy through representation of other clients); *Musacco v. Walden*, No. CIV 13-1053 MV/KBM, 2016 WL 9777182, at *5 (D.N.M. June 17, 2016), report and recommendation adopted, No. CIV 13-1053 MV/KBM, 2017 WL 4512214 (D.N.M. Feb. 27, 2017) (relying on *Maldonado*, *Perle*, and *Jarreau-Griffin* in refusing to impute attorney's knowledge of bankruptcy to one client where knowledge was obtained through representation of different client).

Like the district courts of California and New Mexico, this Court finds the reasoning and rationale of *Maldonado* and *Perle* persuasive and adopts it here. Whatever knowledge or notice CGD received concerning the Plaintiff's bankruptcy case during its representation of Sun West cannot be imputed to SECU. In light of the foregoing, the Court finds that the Plaintiff has failed to show that SECU had knowledge of the bankruptcy case when the Collection Suit was filed. In

accordance with *In re Fina*, *supra*, SECU's lack of knowledge compels a finding that the Collection Suit did not violate the discharge injunction.

The Negative Balance Notices

It is undisputed that the Negative Balance Notices were sent more than one year after the Plaintiff received her discharge. Moreover, the Plaintiff offered no evidence – let alone clear and convincing evidence – to show that the "debt" identified in the Negative Balance Notices arose pre-petition. To the contrary, the unrefuted evidence offered by SECU during the trial confirms that this "debt" arose not only post-petition, but post-discharge. Because only acts concerning debts that arose pre-petition are enjoined by § 524, and because the Negative Balance Notices did not concern a debt that arose pre-petition, SECU's issuance of the Negative Balance Notices does not constitute a violation of the discharge injunction under the plain language of § 524(a)(2).

**Conclusion**

The Plaintiff has not met her burden of proof to show that SECU should be held in contempt. Although SECU violated the discharge injunction by filing the Collection Suit, it did not do so willfully because SECU did not have notice of the Plaintiff's bankruptcy case or discharge prior to filing the Collection Suit. The applicable case law requires proof of both an intentional act in violation of the discharge injunction and of willfulness; the Plaintiff has shown the former but not the latter. Further, the Plaintiff failed to demonstrate that the debt identified in the Negative Balance Notices arose pre-petition. Pursuant to § 727, the Discharge Order only discharged debts that arose pre-petition. Because the debt identified in the Negative Balance Notices did not arise pre-petition, it was not affected by the Discharge Order and the Negative Balance Notices were not violations of the discharge injunction.

For the foregoing reasons, judgment will be entered in favor of State Employees Credit Union and against Lisa Yvette Morris on all counts.  A separate order will issue.

cc:    All parties
       All counsel

**END OF MEMORANDUM OPINION**